**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CESARE WRIGHT,** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 4:25-CV-05930** |
| **v.** | § § | |
| **UNIVERSITY OF ST. THOMAS,** | § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § § | |

**DEFENDANT UNIVERSITY OF ST. THOMAS'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant University of St. Thomas ("UST" or the "University") files its Answer and Affirmative Defenses to Plaintiff Cesare Wright's ("Plaintiff" or "Wright") First Amended Complaint ("Complaint").

**MINISTERIAL EXCEPTION**

**a.     The "Ministerial Exception" Bars Wright's Claims**

As a threshold matter, Wright's claims are barred by the "ministerial exception."  The ministerial exception is a legal doctrine derived from the First and Fourteenth Amendments to the United States Constitution.  These amendments elevate the interests of "religious groups in choosing who will preach their beliefs, teach their faith, and carry out their mission" above society's interests in the enforcement of employment discrimination laws.  Under the ministerial exception, "courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions."  *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020) (holding that the ministerial exception applies to

teachers at a Catholic school).  This doctrine protects the Constitutional rights of religious institutions to decide matters of faith and doctrine without government intrusion.  *Id.*

    **b.**    **UST is a Catholic University Devoted to the Roman Catholic Scholastic Tradition**

UST's status as a Catholic institution of higher education places it squarely among the religious entities that are safeguarded by the ministerial exception.  UST is a private university in Houston, Texas committed to the religious and intellectual tradition of Catholic higher education. UST cherishes its Catholic identity and fully embraces the traditions and teachings of the Roman Catholic Church.  The Mission Statement on UST's website states:

> We are University of St. Thomas, the Catholic university in the heart of Houston. We are committed to the Catholic intellectual tradition and the dialogue between faith and reason. By pursuing excellence in teaching, scholarship, and service, we embody and instill in our students the core values of our founders, the Basilian Fathers: goodness, discipline and knowledge. We foster engagement in a diverse, collaborative community.

University of St. Thomas.  Because of UST's institutional commitment to the Church, "Catholic ideals, attitudes and principles penetrate and inform its activities in accordance with the proper nature and autonomy of these activities." *Ex Corde Ecclesiae*, 14; Ex corde Ecclesiae: Echoes of Newman's The Idea of a University - Cardinal Newman Society.

UST seeks to hire faculty who are aligned with UST's Catholic mission and values.  The Catholic mission and values include serving God in faith and love by giving to students, colleagues, and society; demanding personal responsibility, accountability and integrity; treating all persons with honesty, dignity, respect, and civility; and pursuing truth and academic excellence in the Catholic intellectual tradition, emphasizing the dialogue between faith and reason while embracing the teachings of the Roman Catholic Church.  UST expects its faculty to adhere to these values and UST's Catholic mission.

**c.    UST Declined to Renew Wright's Annual Contract When Wright failed to Comply With the Values Required by UST for Professors**

In 2021, UST hired Wright under a one-year, non-tenure contract, subject to the potential for renewal in the discretion of UST each year.[1]  Wright's title was Assistant Professor; Director, Digital Media Initiatives.  As a professor, Wright was required to teach his courses in accord with UST's religious mission.

Wright was well aware of the role he played in promoting and facilitating the Catholic mission.  For example, Wright's offer letter stated that his employment was contingent upon him participating in UST's "Formation for Mission" onboarding program.  This program required Wright to attend orientation classes in the Fall of 2021 reviewing foundational Catholic texts and covering topics such as "What is a Catholic University?" and "Intellectual Charity & Catholic Social Teaching."  Likewise, Wright signed and acknowledged a copy of UST's Mission Statement in connection with his hiring, which explained that UST professors are required to advance UST's Catholic mission.

Over time, it became apparent to UST that Wright's conduct and demeanor were at odds with UST's Catholic mission and values.  Rather than contributing constructively to the academic and faith-based community, Wright was insubordinate, duplicitous, resistant to collaboration with other faculty members, unwilling to cooperate with UST's leadership, and frequently argumentative.  As just one example that Wright mentions in his Complaint, Wright wanted to develop a new master's program for UST.  Complaint ¶¶ 25-28.  In developing this new master's program, UST told Wright that two of the required courses for the program must teach certain core tenets of the Catholic liberal arts tradition.  As Wright further admits, UST told Wright that Dr.

---

[1] UST renewed Wright's contract for the successive academic years of 2022 to 2023 and 2023 to 2024, but in each case, Wright's position was non-tenure track and his contract was for a limited period of time.

Adam Pugen was best positioned to teach those two courses due to his background and expertise. Complaint ¶ 28. Wright was extremely resistant to UST's directive to include the courses, and Wright denigrated Dr. Pugen's teaching in a harmful and inappropriate manner. *Id.* Wright's conduct was fundamentally inconsistent with UST's commitment to unity and collaboration.

Wright's character became even more evident after his contract was not renewed. After UST informed him of its decision, Wright continued teaching at UST through the end of his contract term and, in the interim, orchestrated a coordinated, intentional smear campaign designed to spread misinformation and harm UST and its leaders. Wright's smear campaign consisted of multiple components. First, upon information and belief, he actively assisted, encouraged, and facilitated UST students in the creation and dissemination of false and defamatory video content concerning UST. Second, upon information and belief, Wright made a significant amount of false and defamatory statements about UST directly to members of the media, including but not limited to the Houston Chronicle, to advance his campaign of retribution. Wright's actions significantly damaged UST's reputation and caused irreparable harm.

As is clear from the retaliation allegations that Wright states in his Complaint, at the center of this case is a dispute between Wright and the University regarding issues of the Catholic curriculum taught by the University and the behavior of the University professors. The ministerial exception applies to Wright's claims of retaliation and acts as a total bar to Wright's ability to bring those claims. *E.g.*, *Our Lady of Guadalupe Sch*, 591 U.S. at 746.

## **ADDITIONAL AFFIRMATIVE AND OTHER DEFENSES**

UST pleads the following affirmative and other defenses, subject to further discovery, but does not assume the burden of proof except to the extent required on pure affirmative defenses:

- 4 -

1. Wright's Complaint fails, in whole or in part, to state a cause of action against UST upon which relief can be granted and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

2. Wright's claims are barred, in whole or in part, by the ministerial exception. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 753 (2020).

3. Wright's purported Title IX claim is, in substance, a Title VII claim that he is attempting to repackage because he is barred from bringing a Title VII claim. *See* § 702(a) of the Civil Rights Act of 1964 ("This subchapter shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.").

4. To the extent Wright alleges claims that fall within Title VII's purview, those claims are preempted. *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995) ("Title VII is the exclusive remedial scheme for employment discrimination claims[.]").

5. Wright's Title IX claim fails as a matter of law to the extent the alleged protected activity falls outside the scope of activity prohibited by Title IX.

6. Wright's claims are barred, in whole or in part, by the applicable statute of limitations.

7. Wright's claims are barred, in whole or in part, by the doctrine of after-acquired evidence.

8. Wright's claims are barred because any actions UST took with respect to Wright were based on reasonable factors other than Wright's alleged protected activity, were made in good faith, for good cause, and without malice, were essential and necessary to the operations of

UST's business and were at all times motivated solely by legitimate nonretaliatory reasons. Further, UST would have taken the same employment actions with respect to Wright regardless of Wright's alleged protected activity.

9.　　All actions taken by UST were justified, in good faith, and without malice.

10.　　Wright's alleged losses and damages, if any, are the result of, and directly related to, Wright's own conduct, actions and/or failure to act, and not of UST's conduct, actions, or failure to act.

11.　　Wright's claims are barred, in whole or in part, because he was the sole and/or proximate cause of his alleged injury and damages.

12.　　On information and belief, Wright has failed to mitigate his damages, if any.

13.　　Wright's claims for damages, if any, are capped or limited in accordance with applicable laws.

14.　　Wright's claim for punitive damages is barred because the alleged acts or omissions of UST fail to rise to the level required to sustain an award of punitive damages, any alleged retaliatory employmentt decision was contrary to UST's good faith efforts to comply with anti-discrimination, anti-harassment, and/or anti-retaliation laws, do not evidence a malicious or reckless indifference to Wright's protected rights, and are not so wanton or willful as to support an award of punitive and/or liquidated damages.

15.　　Wright's claim for punitive damages violates the provisions of the Fifth and Fourteenth Amendment of the United States Constitution and the Texas Constitution, Article I §§ 13 and 19.

16.　　Wright's claims are barred, in part, because a contract was never formed between UST and Plaintiff.

17.    Wright's claims are barred, in part, because there was no mutual assent.

18.    Wright's claims are barred, in part, because there was a lack of consideration.

19.    Wright's claims are barred, in part, by the doctrine of unilateral mistake.

20.    Wright's claims are barred, in part, by the doctrine of unclean hands.

21.    Wright's claims are barred, in part, by the doctrine of unconscionability.

22.    Wright's claims are barred by his own misconduct, which would amount to a prior material breach if there was a contract.

23.    Subject to further discovery, UST asserts the defenses of ratification, repudiation, waiver, estoppel, statute of frauds, laches and/or offset as a result of damages to UST caused by Plaintiff.

24.    UST specifically reserves the right to assert other defenses reasonably in advance of trial.

### ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Subject to the above and foregoing affirmative defenses and reserving the right to assert additional defenses and/or amend its First Amended Answer as additional facts are discovered during this lawsuit, UST pleads as follows to the specific allegations of Wright's First Amended Complaint:

### PLAINTIFF'S FIRST AMENDED COMPLAINT[2]

UST admits that Wright submits his First Amended Complaint against UST but denies that it engaged in any unlawful conduct and that Wright is entitled to any of the relief that he seeks.

---

[2] UST restates the headings and subheadings used by Plaintiff in his First Amended Complaint solely for the convenience of the Court and not to indicate an admission or denial of any allegations contained in those headings and/or subheadings. To the extent a response is required to the subheadings, UST denies the allegations contained in Wright's headings and/or subheadings.

### A.    PARTIES

1.    UST lacks sufficient information to admit or deny the allegations contained in Paragraph 1 of Wright's First Amended Complaint, and thus denies the same.

2.    UST admits that it is a post-secondary educational institution located in Houston, Texas, and is a recipient of federal funding.  UST further admits that its Board of Directors is charged with certain governance and operations matters with respect to UST.  UST denies the remaining allegations contained in Paragraph 2 of Wright's First Amended Complaint.

### B.    JURISDICTION AND VENUE

3.    UST admits that this Court has jurisdiction under 28 U.S.C. § 1331 because Wright alleges claims under Title IX.  UST further admits that the Court may exercise supplemental jurisdiction over Wright's state law claims, but denies that the allegations giving rise to either form of jurisdiction are true, that it engaged in any unlawful conduct, and that Wright is entitled to any of the relief that he seeks.  UST denies the remaining allegations contained in Paragraph 3 of Wright's First Amended Complaint.

4.    UST admits that venue is proper in this District but denies the acts and omissions alleged by Wright as giving rise to venue in this Court and denies the remaining allegations contained in Paragraph 4 of Wright's First Amended Complaint.  UST further denies it engaged in any unlawful conduct and that Wright is entitled to any relief that he seeks.

### C.    FACTS

<u>Plaintiff Dr. Wright and his Contributions to UST Summarized</u>[3]

5.    UST denies the allegations contained in Paragraph 5 of Wright's First Amended Complaint.

---

[3] To the extent a response is required to the subheadings, UST denies the allegations contained in Wright's headings and/or subheadings.

6.      UST lacks sufficient information to admit or deny the allegations contained in Paragraph 6 of Wright's First Amended Complaint, and thus denies the same.

7.      UST admits that Wright started a Digital Media Initiatives program for UST Communications students, but denies the remaining allegations contained in Paragraph 7 of Wright's First Amended Complaint

8.      UST admits that Wright purported to have designed a master's degree program in Digital Media and Emergent Technology ("DMET") and that Wright assisted in bringing Debra Duncan and Melissa Wilson to lecture and co-teach at UST.  UST denies the remaining allegations contained in Paragraph 8 of Wright's First Amended Complaint.

9.      UST denies the allegations contained in Paragraph 9 of Wright's First Amended Complaint.

10.      UST denies the allegations contained in Paragraph 10 of Wright's First Amended Complaint.

### Dr. Wright Decides to Complain to UST Academic Leaders About Sexism[4]

11.      UST lacks sufficient information to admit or deny what unnamed students told Dr. Wright about Dr. Adam Pugen, and thus denies the same.  UST denies the remaining allegations contained in Paragraph 11 of Wright's First Amended Complaint.

12.      UST denies the allegations contained in Paragraph 12 of Wright's First Amended Complaint.

13.      UST admits that Dr. Wright and Dr. Pugen engaged in a text message exchange on or about February 2023 regarding an image posted on an Instagram account run by UST

---

[4] To the extent a response is required to the subheadings, UST denies the allegations contained in Wright's headings and/or subheadings.

Communications students.  UST further admits that the image featured two women staring directly at the camera and had the phrase "Rise & Grind" printed across the image.  UST further admits that Dr. Pugen texted Dr. Wright that he was "a bit fazed by the salacious imagery" due to the image's connotation and the fact UST is a Catholic university.  UST further admits that Dr. Wright asked if Dr. Pugen would "have the same aversion to the exact same catch phrase over a picture of male students," to which Dr. Pugen responded, "I would think the same."  UST denies the remaining allegations contained in Paragraph 13 of Wright's First Amended Complaint.

14.    UST denies the allegations contained in Paragraph 14 of Wright's First Amended Complaint.

15.    UST admits that Dr. Wright sent an email to Dr. Behr in April 2023 and to Dr. Monaghan in May 2023 regarding his perceived concerns with SACSCOC accreditation, but UST denies that it engaged in any unlawful conduct and that Wright is entitled to any of the relief that he seeks.  UST denies the remaining allegations contained in Paragraph 15 of Wright's First Amended Complaint.

16.    UST admits that Wright created a document outlining his perceived concerns with SACSCOC accreditation, but UST denies that it engaged in any unlawful conduct and that Wright is entitled to any of the relief that he seeks.  UST denies the remaining allegations contained in Paragraph 16 of Wright's First Amended Complaint.

17.    UST denies the allegations contained in Paragraph 17 of Wright's First Amended Complaint.

18.    UST denies the allegations contained in Paragraph 18 of Wright's First Amended Complaint.

19.     UST denies the allegations contained in Paragraph 19 of Wright's First Amended Complaint.

<u>UST Contracts with Dr. Wright to Develop and Implement a Master's Program in Digital Media, Promising Him Stipends To Do So[5]</u>

20.     UST admits that its Board of Directors preliminarily approved a Master of Arts in Digital Media and Emergent Technology Program, but lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 20 of Wright's First Amended Complaint, and thus denies the same.  UST further denies that it engaged in any unlawful conduct and denies that Wright is entitled to any of the relief that he seeks.

21.     UST denies the allegations contained in Paragraph 21 of Wright's First Amended Complaint.

22.     UST denies the allegations contained in Paragraph 22 of Wright's First Amended Complaint.

23.     UST admits that its Board of Directors preliminarily approved a Master of Arts in Digital Media and Emergent Technology Program, but denies the remaining allegations contained in Paragraph 23 of Wright's First Amended Complaint.

24.     UST lacks sufficient information regarding Wright's purported grant requests and anticipations about the DMET graduate program, which never launched, and thus denies the same. UST denies the remaining allegations contained in Paragraph 24 of Wright's First Amended Complaint.

---

[5] To the extent a response is required to the subheadings, UST denies the allegations contained in Wright's headings and/or subheadings.

<u>As Dr. Wright Is Launching His New Graduate Program to Acclaim, He Continues to Oppose Discrimination at the University[6]</u>

25.     UST denies the allegations contained in Paragraph 25 of Wright's First Amended Complaint.

26.     UST denies the allegations contained in Paragraph 26 of Wright's First Amended Complaint.

27.     UST admits that Wright met with Dr. George Harne and Dr. Martin Lockerd on or about November 21, 2023, but denies the remaining allegations contained in Paragraph 27 of Wright's First Amended Complaint.

28.     UST admits that it was conveyed to Wright that two of the required courses for the DMET program needed to be related to the Catholic liberal arts tradition, and that Dr. Pugen was best positioned to teach those courses, but denies the remaining allegations contained in Paragraph 28 of Wright's First Amended Complaint.

<u>After Dr. Wright Refuses to Be A "Team Player" By Remaining Silent about Dr. Pugen's Discrimination, He Is Fired—Notwithstanding All His Contributions to UST[7]</u>

29.     UST admits that Dr. Evans and Dr. Lockerd met with Wright on December 12, 2023, and informed him that UST would not be renewing his Faculty Contract after May 31, 2024. UST  denies the remaining allegations contained in Paragraph 29 of Wright's First Amended Complaint.

30.     UST admits that it confirmed Wright's courseload, but denies the remaining allegations contained in Paragraph 30 of Wright's First Amended Complaint.

---

[6] To the extent a response is required to the subheadings, UST denies the allegations contained in Wright's headings and/or subheadings.

[7] To the extent a response is required to the subheadings, UST denies the allegations contained in Wright's headings and/or subheadings.

31.     UST lacks sufficient information to admit or deny Dr. Ludwick's attendance at a press meeting and what Dr. Ludwick purportedly told Plaintiff, and thus denies the same.  UST denies the remaining allegations contained in Paragraph 31 of Wright's First Amended Complaint.

32.     UST admits Wright is quoted in an article published by the Houston Chronicle on April 20, 2024, but denies that it engaged in any unlawful conduct and that Wright is entitled to any of the relief that he seeks.  UST denies the remaining allegations contained in Paragraph 32 of Wright's First Amended Complaint.

33.     UST admits that in December 2024, it provided Dr. Pugen with notice that it decided not to renew his Faculty Contract for the academic year 2025-2026.  UST further admits that Dr. Pugen's contract non-renewal was discussed at the Faculty Senate and that UST ultimately reinstated Dr. Pugen as a professor.  UST denies the remaining  allegations contained in Paragraph 33 of Wright's First Amended Complaint.

34.     UST denies the allegations contained in Paragraph 34 of Wright's First Amended Complaint.

35.     UST denies the allegations contained in Paragraph 35 of Wright's First Amended Complaint.

**D.      CAUSE OF ACTION: RETALIATION IN VIOLATION OF TITLE IX**

36.     UST admits that Wright adopts by reference all of the facts set forth in the previous Paragraphs of his Complaint, but denies that it engaged in any unlawful conduct and that Wright is entitled to any of the relief that he seeks.  UST incorporates its previous and subsequent responses to Wright's allegations.

37.     UST denies the allegations contained in Paragraph 37 of Wright's First Amended Complaint.

38. UST admits that Dr. Evans and Dr. Lockerd met with Wright on December 12, 2023, and informed him that UST would not be renewing his contract after May 31, 2024, but denies that it engaged in any unlawful conduct and that Wright is entitled to any of the relief that he seeks. UST denies the remaining allegations contained in Paragraph 38 of Wright's First Amended Complaint.

39. UST denies the allegations contained in Paragraph 39 of Wright's First Amended Complaint.

40. UST denies the allegations contained in Paragraph 40 of Wright's First Amended Complaint.

## E. CAUSE OF ACTION: BREACH OF CONTRACT

41. UST admits that Wright adopts by reference all of the facts set forth in the previous Paragraphs of his Complaint, but denies that it engaged in any unlawful conduct and that Wright is entitled to any of the relief that he seeks. UST incorporates its previous and subsequent responses to Wright's allegations.

42. UST denies the allegations contained in Paragraph 42 of Wright's First Amended Complaint.

43. UST admits that Wright sent a letter to UST on May 12, 2025 demanding payment of $37,500 and further admits that UST did not pay Wright this amount because Wright is not entitled to it (or any other alleged damages). UST denies the remaining allegations contained in Paragraph 43 of Wright's First Amended Complaint.

## F. PRAYER

44. UST admits that Wright requests that the Court issue citation for UST to appear and answer, and further admits that Wright requests the Court award him the relief outlined under

the "Prayer" section of Plaintiff's First Amended Complaint (including subparts (a.) through (g.)), but denies that such relief is appropriate, that it engaged in any unlawful conduct, and that Wright is entitled to any of the relief that he seeks.

Dated: March 17, 2026

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

/s/ Carolyn Webb Barker
    Kimberly F. Cheeseman
    State Bar No. 24082809
    kimberly.cheeseman@nortonrosefulbright.com
    Carolyn Webb Barker
    State Bar No. 24106558
    Carolyn.barker@nortonrosefulbright.com
    Sophie Price
    State Bar No. 24143309
    Sophie.price@nortonrosefulbright.com
    1550 Lamar Street, Suite 2000
    Houston, TX 77010
    Telephone: (713) 651-5151
    Facsimile: (713) 651-5246

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 17, 2026, the foregoing document was served in compliance with the Federal Rules of Civil Procedure on this 17th day of March 2026.

/s/ Carolyn Webb Barker
Carolyn Webb Barker

302221042.1